**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRADLEY TEWINKLE, for himself and all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>CAPITAL ONE, N.A., and DOES 1-100, inclusive,<br><br>             Defendants. | Civil Action No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bradley TeWinkle, individually and on behalf of all others similarly situated, alleges as follows:

### Introduction

1. Plaintiff brings this class action against Defendant Capital One, N.A. ("Capital One" or "Defendant") for violating the Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. § 1691 *et seq*. The ECOA entitles credit applicants against whom adverse action is taken to a statement of reasons for such action from the creditor. 15 U.S.C. § 1691(d). To satisfy this mandate, a creditor must provide a written notice including the specific reasons for the adverse action or indicating that an applicant has the right to a statement of reasons. 15 U.S.C. § 1691(d)(2) and (3).

2. The adverse action notice must also include the creditor's address. *See* 12 C.F.R. § 1002.9(a)(2).

3. Defendant failed to provide Plaintiff and class members with the requisite notice after terminating their line of credit accounts. Instead, Defendant sent each Plaintiff and class member an email in the form of Exhibit A hereto that gave no closure reason at all, made no mention of their right to a statement of specific reasons, and failed to include Capital One's address.

4. Plaintiff and the class seek statutory punitive damages of up to $500,000, a halt to Defendant's unlawful practices, a compliant adverse action notice for each class member, and attorneys' fees and costs.

5. The allegations herein that relate to Plaintiff's personal actions are made based on Plaintiff's personal knowledge. The balance are made on information and belief based on the investigation of counsel.

## Parties

6. Plaintiff Bradley TeWinkle is an individual residing in North Carolina.

7. At the time of the operative facts of this Complaint, Claimant was a citizen of New York, Niagara County.

8. Defendant Capital One is a national bank with its headquarters located in McLean, Virginia. Defendant provides banking services to consumers throughout New York and the United States.

9. Plaintiff is unaware of the true identities of those Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues such Defendants by fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the injuries alleged by Plaintiff. Plaintiff will seek leave of Court to amend this Complaint to show the true names and capacities of the fictitiously named Defendants if and when they have been ascertained.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the Complaint alleges a federal claim against Defendant for violation of the ECOA.

11. This Court has personal jurisdiction over Defendant because Defendant provided banking services to Plaintiff in New York.

12. Venue lies here pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

**General Allegations**

13. Originally enacted in 1974 to prohibit discrimination in credit transactions, the ECOA was amended in 1976 to require creditors to provide applicants with written notice when adverse action was taken against them regarding their credit. In addition to discouraging discriminatory practices, the notice requirement is intended to provide consumers with a "valuable educational benefit" and to allow for the correction of errors "where the creditor may have acted on misinformation or inadequate information." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016) (quoting *S. Rep.* No. 94–589, at 4 (1976)).

14. The ECOA authorizes the Consumer Financial Protection Bureau ("CFPB") to issue regulations "to carry out the [ECOA's] purposes." 15 U.S.C. § 1691b(a). Under this authority, the CFPB issued regulations that are collectively known as Regulation B. 12 C.F.R. § 1002.1(a).

15. The adverse action notice requirement is set forth at 15 U.S.C. § 1691(d), which provides in relevant part:

> (2) Each applicant [for credit] against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
>
> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.
>
> (3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

16. Regulation B provides: "a creditor shall notify an applicant of action taken within: … (iii) 30 days after taking adverse action on an existing account…." 12 C.F.R. § 1002.9(a)(1).

17. The notice must include "a statement of specific reasons for the action taken" or "a disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification." 12 C.F.R. § 1002.9(a)(2).

18. If a creditor opts to provide the statement of specific reasons in the closure notice, the statement of reasons "must be specific and indicate the principal reason(s) for adverse action." 12 C.F.R. § 1002.9(b)(2).

19. The notice must also include "the name and address of the creditor…." 12 C.F.R. § 1002.9(a)(2).

20. Regulation B defines "applicant" as "any person who requests or who has received an extension of credit from a creditor…." 12 C.F.R. § 1002.2(e). Because Plaintiff had a line of credit account with Defendant, Plaintiff is an "applicant."

21. Regulation B defines "creditor" as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 1002.2(l). Because Defendant regularly participates in credit decisions, including setting the terms of credit, in the ordinary course of business, Defendant is a "creditor."

22. Regulation B defines "adverse action" as:

> (i) A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered;
>
> (ii) A termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts; or
>
> (iii) A refusal to increase the amount of credit available to an applicant who has made an application for an increase.

12 C.F.R. § 1002.2(c)(1). Regulation B also excludes several actions from the definition of "adverse action." 12 C.F.R. § 1002.2(c)(2). Defendant terminated Plaintiff's line of credit account and Defendant's conduct is not excluded from the definition of "adverse action" under

12 C.F.R. § 1002.2(c)(2). Defendant thus took an "adverse action" against Plaintiff.

23. Defendant failed to provide Plaintiff with the notification required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9.

24. On or around December 22, 2015, Defendant sent an email to Plaintiff stating that it had closed, among other things, his line of credit, *inter alia*, (the "Termination Notice"). A copy of the Termination Notice is attached hereto as Exhibit A.

25. The Termination Notice did not include either: (a) a "statement of specific reasons for the action taken," or (b) a disclosure of Plaintiff's "right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification."

26. The Termination Notice did not include the address of the creditor, as required by 12 C.F.R. § 1002.9(a)(2).

27. No other correspondence was sent to Plaintiff by the Defendant regarding the closure of the line of credit.

## Class Action Allegations

28. Defendant violated the ECOA in the same way against other persons similarly situated to Plaintiff. Plaintiff therefore brings this action on behalf of the following class pursuant to Fed. R. Civ. P. 23(b)(2) and (3):

> All natural persons to whom Capital One sent or sends an email, in the period beginning 5 years before the filing of this action and ending on the day of class certification, to a person with a United States address, that: (a) states the addressee's "Overdraft Line of Credit" has been closed or will be closed (or words to that effect), (b) does not state the reason(s) for the closure, and (c) does not disclose the right to a statement of specific reasons for the closure.

29. The following individuals are excluded from the class:

   a. officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and

   b. all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

{00117993 1 }

30. Class certification is appropriate because this action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

31. <u>Numerosity</u>: The potential members of the class are so numerous that joinder of all the members of the class is impracticable. Plaintiffs are informed and believe that there are at least hundreds of class members.

32. <u>Commonality</u>: There are questions of law and fact common to the class that predominate over any individualized questions, including but not limited to:

   a. Whether class members are "applicants" under the ECOA;

   b. Whether Defendant is a "creditor" under the ECOA;

   c. Whether Defendant's terminations of Plaintiff's and class members' line of credit accounts constitute an "adverse action" under the ECOA;

   d. Whether Defendant provided Plaintiff and class members with a "statement of specific reasons for the action taken" or "a disclosure of the applicant's right to a statement of specific reasons within 30 days";

   e. Whether Defendant provided Plaintiff and class members with an adverse action notification containing the "address of the creditor";

   f. Whether Plaintiff and the class are entitled to an award of punitive damages under the ECOA; and

   g. Whether Plaintiff and the class are entitled to injunctive relief halting Defendant's unlawful practices.

33. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the class in that Plaintiff and the other class members each: (a) received an extension of credit from Defendant, (b) had an adverse action taken against them by Defendant, and (c) received a letter from Defendant that:

   (i) states that the recipient's "Overdraft Line of Credit" has been closed or will be closed (or words to that effect),

   (ii) does not state the reason(s) for the closure or the recipient's right to a statement of specific reasons for the closure, and

   (iii) does not provide Defendant's address.

Defendant's conduct is common to all class members and represents a common thread of conduct resulting in injury to all members of the class. Plaintiff has suffered the harm alleged and has no interests antagonistic to any other class member.

  34. <u>Adequacy</u>: Plaintiff is a member of the class and will fairly and adequately represent and protect the interests of the class. Plaintiff's interests do not conflict with the interests of other class members. Furthermore, counsel for Plaintiff and the class are competent and experienced in class action litigation and consumer protection litigation. Plaintiff's counsel will fairly and adequately protect and represent the interests of the class.

  35. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. The claims of individual class members are too small to warrant individual action. Individual joinder of all class members is impracticable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Class treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

  36. <u>Rule 23(b)(2)</u>: In addition to a Rule 23(b)(3) class, a Rule 23(b)(2) class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**First Claim for Violation of the ECOA's Notice Requirement**
**(15 U.S.C. § 1691(d))**

  37. Plaintiff incorporates the foregoing paragraphs as though repeated here.

  38. Plaintiff and class members are "applicants" under 12 C.F.R. § 1002.2(e) because they received an extension of credit from Defendant.

  39. Defendant is a "creditor" under 12 C.F.R. § 1002.2(e) because it regularly participates in credit decisions, including setting the terms of credit, in the ordinary course of

business.

40. Plaintiff and class members each had an "adverse action" taken against them by Defendant under 12 C.F.R. § 1002.2(c) in that Defendant terminated Plaintiff's and each class member's credit account.

41. Defendant failed to provide Plaintiff and class members with a "statement of specific reasons for the action taken" or "a disclosure of the applicant's right to a statement of specific reasons" within 30 days terminating their credit card account.

42. Defendant failed to provide provided Plaintiff and class members with an adverse action notification containing the "address of the creditor."

43. Defendant's conduct violates the ECOA's notice requirement set forth at 15 U.S.C. § 1691(d) and in the implementing regulations.

## Prayer for Relief

WHEREFORE, Plaintiff, individually and on behalf of the class, prays for judgment as follows:

1. For punitive damages of up to $500,000 pursuant to 15 U.S.C. § 1691e(b) in an amount to be proven at trial;
2. For injunctive relief pursuant to 15 U.S.C. § 1691e(c) including an order halting Defendant's unlawful practices;
3. For attorneys' fees and costs of suit pursuant to applicable law including, without limitation, 5 U.S.C. § 1691e(d); and
4. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues, claims, and causes of action so triable.

RESPECTFULLY SUBMITTED,

YANKWITT LLP
DARR LAW LLC
GALLO LLP

DATED: July 31, 2019

By: /s/ Michael H. Reed

Russell M. Yankwitt (russell@yankwitt.com)
(*pro hac vice* motion to be filed)
Michael H. Reed (michael@yankwitt.com)
YANKWITT LLP
140 Grand Street, Suite 501
White Plains, New York 10601
Tel.: (914) 686-1500

Alexander Darr (*pro hac vice* motion to be filed)
darr@darr.law
DARR LAW LLC
1391 W. 5th Ave., Ste. 313
Columbus, OH 43212
Tel.: (312) 857-3277

Ray E. Gallo (*pro hac vice* motion to be filed)
rgallo@gallo.law
Dominic Valerian (*pro hac vice* motion to be filed)
dvalerian@gallo.law
GALLO LLP
1604 Solano Ave., Suite B
Berkeley, CA 94707
Tel.: (415) 257-8800