UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRADLEY TeWINKLE,
for himself and all others similarly
situated,

                             Plaintiff,

                        v.

CAPITAL ONE, N.A., et al.,

                          Defendants.

_____

**Hon. Hugh B. Scott**


**19CV1002V**

**Report
&
Recommendation**

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 10) for consideration of dispositive motions. The instant matter before the Court is a motion of defendant Capital One, N.A. ("defendant") (Docket No. 8) to dismiss the Complaint. Responses were due by September 20, 2019 (Docket No. 11), with plaintiff responding (Docket No. 15). Reply was due by September 27, 2019 (Docket No. 11), which defendant duly replied (Docket No. 18). This motion was deemed submitted without oral argument on September 27, 2019 (see Docket No. 11).

Plaintiff also moved for this Court to take judicial notice of certain federal regulations, 70 Fed. Reg. 9127, and the Senate Report for the statute at issue in this case, S. Rep. No. 94-598 (1976) (Docket No. 16). Defendant does not object (Docket No. 18, Defs. Reply Memo. at 1

n.1).  Plaintiff's motion (Docket No. 16) for this Court to take judicial notice of the identified items is **granted**.

## BACKGROUND

This is an Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, et seq. ("ECOA" or the "act"), case by plaintiff for himself and all others similarly situated (Docket No. 1, Compl.). According to plaintiff, "the ECOA entitles credit applicants against whom adverse action is taken to a statement of reasons for such action from the creditor, 15 U.S.C. § 1691(d)" (id. ¶ 1; see also id. ¶¶ 14-15), by written notice of the specific reason for the action (id. ¶ 1).  Plaintiff, a North Carolina resident who resided in New York at the relevant period for this case, alleges that defendant Capital One, N.A., and unidentified Does 1-100 (collectively "Capital One"), failed to provide that notice when it closed plaintiff's line of credit accounts (id. ¶¶ 3, 6-7).  Instead, defendant sent plaintiff an email with no disclosed reason at all (id., Ex. A).  Exhibit A to the Complaint is an email to plaintiff, dated December 22, 2015, stating that plaintiff agreed to the Account Disclosures when he opened his account with defendant which reserved defendant's right to close accounts at anytime for any reason (id.).  That email then announced the closing of plaintiff's accounts, including his overdraft line of credit and debit accounts (id.).

Plaintiff and the class he purports to represent seek punitive damages up to $500,000, a halt of defendant's unlawful practices, a compliant adverse action notice to plaintiff and class members, and attorneys' fees and costs (id. ¶ 4, and at page 8 of 9).

*Defendant's Motion to Dismiss (Docket No. 8)*

Defendant move to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim (Fed. R. Civ. P. 12(b)(6)) (Docket No. 8).  Defendant

there argues plaintiff lacks standing to pursue an ECOA violation because plaintiff did not suffer any injury in fact (id., Def. Memo. at 1, 2-5).  Defendant argues that the ECOA was intended to protect credit applicants.  Defendant concludes that plaintiff was not a credit applicant and hence not protected by that statute.  (Id. at 4.)  Defendant claims that plaintiff cannot show he was discriminated against in applying for credit (id. at 5).

Alternatively, defendant argues that plaintiff never alleged he was an "applicant" under the ECOA (id. at 2, 6-8).  To defendant, plaintiff has not plausibly alleged that he applied for an extension, renewal, or continuation of credit (id. at 6).  The act defines a credit "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit," 15 U.S.C. § 1691a(b) (id. at 6).  Defendant argues that dismissal should be with prejudice because plaintiff is unable to allege a claim if given leave to replead (id. at 8-9).

Plaintiff responds that he has alleged an injury in fact, with the closing of plaintiff's checking account and its overdraft line of credit and debit card account subject to the ECOA and its notice requirements (Docket No. 15, Pl. Memo. at 3-12, 11).  The plain language of the ECOA establishes that an "applicant" includes those who received an extension of credit. Section 1691(d)(6) has the denial or revocation of credit as an adverse action which occurs to one who has applied for credit, hence is an "applicant" under the ECOA § 1691a (id. at 13). Plaintiff contends that the legislative history of the ECOA amendment in 1976 supports including as an "applicant" on existing account holder (id. at 15 n.9, citing S. Rep. No. 94-589).

Alternatively, plaintiff argues that he is an "applicant" under Regulation B, 12 C.F.R. § 1002.2(e) (id. at 15). Regulation B was enacted under ECOA's grant of rule-making (id. at 16). That regulation defines "applicant" "means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit," id. Applying the two-step Chevron deference analysis, see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984), plaintiff argues that the statutory definition was ambiguous and that the agency's definition is a permissible construction of the ECOA (id. at 16), see also Florez v. Holder, 779 F.3d 207, 210 (2d Cir. 2015). Plaintiff then distinguishes the case defendant cites for the narrow definition of "applicant" under the ECOA (id. at 16-17).

In reply, defendant argues that plaintiff suffered no injury or harm from defendant's alleged ECOA violation either to grant plaintiff standing or for plaintiff to state a claim (Docket No. 18, Def. Reply Memo. at 1). Plaintiff lacks standing because the overdraft line of credit was closed when his checking account was closed, therefore defendant argues plaintiff was not harmed by the apparent lack of ECOA notice for termination of that line of credit (id. at 2). This line of credit was dependent upon the existence of the checking account. That checking account can be terminated without stating a reason under the ECOA. Thus, closing the overdraft line of credit (as well as the linked debit card) with the closing of the checking account did not require further explanation under the ECOA (id.). Defendant further argues that the email attached as the Complaint's Exhibit A in fact did provide the reason for closing the line of credit, that it was closed with its linked checking account (id. at 3). Defendant also asserts that the statutory definition of "applicant" is unambiguous and refers only to new applications (id. at 4,

emphasizing "application" used in 15 U.S.C. § 1691a(b).  Defendant finally concludes that there

is no Chevron deference required for the Regulation B definition (id. at 10).

## DISCUSSION

I.      Applicable Standards

      A.      Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a

Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a

Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible

on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46);

Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4

(D.D.C. May 31, 2007).  To survive a motion to dismiss, the factual allegations in the Complaint

"must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S.

at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in

Ashcroft v. Iqbal, 556 U.S. 662 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its face.'
> [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .
> The plausibility standard is not akin to a 'probability requirement,' but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where
> a complaint pleads facts that are 'merely consistent with' a defendant's liability, it
> 'stops short of the line between possibility and plausibility of "entitlement to
> relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

Rule 12(b)(1) provides a defendant may assert a defense of lack of subject-matter jurisdiction, Fed. R. Civ. 12(b)(1).

B.      Equal Credit Opportunity Act

Plaintiff prevails under the Equal Credit Opportunity Act by proving that defendant was a creditor, plaintiff was a loan applicant, defendant took adverse action on plaintiff's credit application, and defendant failed to provide plaintiff with an ECOA-compliant notice of its adverse action, Stoyanovich v. Fine Art Capital LLC, No 06-CIV-13158, 2007 U.S. Dist. LEXIS 670793, at *7 (S.D.N.Y. Aug. 17, 2007).  The ECOA and its Regulation B applies to overdraft protection programs, 70 Fed. Reg. at 9131 (Docket No. 15, Pl. Atty. Decl. Ex. 1; Docket No. 15, Pl. Memo. at 10-11).

As argued by defendant (Docket No. 8, Def. Memo. at 6), the ECOA defines an applicant as "any person who applies to a creditor directly for an extension, renewal, or continuation of

credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit," 15 U.S.C. § 1691a(b).  A customer having an existing loan serviced was not an applicant under the ECOA and could not invoke its protections, Gorham-Dimaggio v. Countrywide Home Loan, Inc., 592 F. Supp. 2d 283, 291 (N.D.N.Y. 2008), aff'd, 421 F. App'x 97 (2d Cir. 2011) (Docket No. 8, Def. Memo. at 7).  The district court in Gorham-Dimaggio held that any discrimination alleged in that Complaint "occurred during the servicing of Plaintiff's existing loan," id. (emphasis added).  A plaintiff making an ECOA claim must be a loan applicant as defined by that statute to recover thereunder, Stoyanovich, supra, 2007 U.S. Dist. LEXIS 670793, at * 7, 10-11 (id.).

II.      Application

At issue is whether plaintiff is an "applicant" under the ECOA to give him (and potentially his class) standing and a cause of action.  This turns, in part, on whether a client who had a line of credit but seeks to continue that credit is an "applicant" under that statute.  Note, this motion is not seeking class certification and this Report does not address class certification.

Section 1691a(b)'s definition of an "applicant" includes extension, renewal, or continuation of credit, 15 U.S.C. § 1691a(b).  As defendant emphasizes (Docket No. 18, Def. Reply Memo. at 4), this provision refers to "applies" or applying, implying new applications rather than maintenance of an existing relationship.  Plaintiff counters that "applicant" should include successful credit holders who have their credit terminated (Docket No. 15, Pl. Memo. at 14-15), as reflected in the legislative history for the ECOA, see S. Rep. No. 94-589, at 5 (id. at 15 n.9).

The cases under ECOA also view an "applicant" as a new application (either for new credit or additional credit from an existing line), e.g., Gorham-Dimaggio, supra, 592 F. Supp. 2d at 291 ("applicant" under ECOA does not include customer for servicing existing loan); Stoyanovich, supra, 2007 U.S. Dist. LEXIS 670793, at *7, 10-11 ("applicant" must be a loan applicant, including rejected loan applicant).  Defendant's contention is based upon the act applying only to new credit rather than servicing or continuing existing lines of credit.

Comparing the definitions in the ECOA and Regulation B has nuanced differences,

| | |
|---|---|
| "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit," 15 U.S.C. § 1691a(b) | "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit," Regulation B, 12 C.F.R. § 1002.2(e) |

A major difference is the verb used.  The Act repeatedly uses "applies," 15 U.S.C. § 1691a(b), while Regulation B has that person "request" extensions of credit, 12 C.F.R. § 1002.2(e).  Thus, Regulation B includes as an applicant those who have received credit, presumably including customers with existing or closed accounts such as defendant.  Extension, renewal, or continuation of credit under § 1691a would appear to include customers with existing accounts.

Chevron deference applies if the statute that authorizes the regulation is silent or ambiguous on the point addressed by the regulation, Chevron, U.S.A., supra, 467 U.S. at 843.

8

While the Consumer Financial Protection Board (and, before that board's creation, the Federal Reserve Board) made a permissible construction of the applicant definition, this Court needs to reach the regulation only if the ECOA provision is silent or ambiguous.  Both the statute and Regulation B do not explicitly address whether an existing account holder wishing to retain his or her account (or those whose creditors terminated credit) is an "applicant."  Rather, both definitions include new applicants, applicants for (new) additional credit, and for the extension of credit.  Arguably, both provisions are silent whether existing credit holder can be an "applicant" regarding existing credit.  The ECOA is **not ambiguous** on whether to have this Court engage in <u>Chevron</u> deference (<u>see also</u> Docket No. 18, Def. Reply Memo. at 10).  As unsuccessfully argued by the plaintiff in <u>Kalisz v. Bank of America, N.A.</u>, No. 18-CV-516, 2018 U.S. Dist. LEXIS 155587, at *6-7 (E.D. Va. Sept. 11, 2018), the plaintiff here has not established why the Regulation B definition of "'applicant' should control over the definition of 'applicant' in the plan meaning of the" ECOA, <u>id.</u> (Docket No. 8, Def. Memo. at 8).  Thus, this Court need only consider ECOA "applicant" definition.

Applying ECOA's definition, plaintiff here is **not an applicant**.  The statute calls for plaintiff to seek credit (a new request, an extension of existing or additional credit or resisting termination of credit).  Upon receiving the notice attached as Exhibit A to the Complaint, plaintiff would have been an applicant if he sought reconsideration or applied for renewal of the line of credit.  This is in contrast to the district court in <u>Powell v. Pentagon Federal Credit Union</u>, No. 10 CV 785, 2010 U.S. Dist. LEXIS 97473, at *9-15 (N.D. Ill. Sept. 17, 2010) (<u>see</u> Docket No. 15, Pl. Memo. at 14, 17; <u>cf.</u> Docket No. 18, Def. Reply Memo. at 6), which combined the regulatory and statutory definitions of "applicant" to find that the plaintiff there was an

"applicant" for a terminated credit account, id. at *13-15.  There, the Powell court found that applying the statutory definition narrowly "would preclude a plaintiff with an existing account from bringing a claim for the discriminatory revocation of that account," id. at *12.  That court then found that plaintiff was an "applicant" under Regulation B definition and that "such a definition is consistent with Congress' intent in passing the statute," then denying defendant's motion to dismiss, id. at *15.

Here, this Court finds that there is no ambiguity in § 1691a's definition to have to resort to Regulation B and its definition.  This Court **should not join the Powell Court in construing ECOA's applicant definition with that of Regulation B**.

A.      Plaintiff's Standing and Stating a Claim

To have standing under Article III of the United States Constitution, "Plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact'" that is fairly traceable to the challenged action of the defendant," Kalisz, supra, 2018 U.S. Dist. LEXIS 155587, at *4.  Plaintiff has standing, and states a claim under ECOA, see id. at *5, only if he is an "applicant" for a loan under the ECOA.  Plaintiff has **not established that he has been injured in fact**.  The line of credit and debit account at issue are not free-standing accounts. Both were tied to plaintiff's closed checking account.  The line of credit provides overdraft protection for the checking account and the debit account allowed for checkless purchases by debiting that checking account.  Once the checking account was closed, the associated credit accounts are closed with it.  Even accepting plaintiff's view (Docket No. 15, Pl. Memo. at 10-11) that revocation of the overdraft line of credit with the checking account was a "credit

transaction," plaintiff needed to apply upon the termination to qualify as an "applicant" under the ECOA. Thus, plaintiff has no injury for the lack of ECOA notice as an "applicant."

The email notice plaintiff received closing these accounts also provided the reason for the closing of the line of credit, that it was closed with the associated checking account (Docket No. 1, Compl., ¶ 24, Ex. A). That email referred to the Account Disclosures in which defendant reserved the right to close accounts "at any time, for any reason" (id., Ex. A), including plaintiff's checking accounts.

Defendant's motion to dismiss (Docket No. 8) should be **granted**.

B.      Form of Dismissal

Defendant argues that amendment of this Complaint would be futile and, therefore, dismissal should be with prejudice (Docket No. 8, Def. Memo. at 8-9). Plaintiff has not sought leave to amend (but cf. Docket No. 15, Pl. Memo. at 17). So far, plaintiff briefly argued that, if defendant's motion is granted, he should be granted leave to amend (Docket No. 15, Pl. Memo. at 17) but has not fully briefed why leave should be granted or presented a proposed amended pleading. Plaintiff also has not argued that an amendment would not be futile or prejudicial to defendant, cf. Fed. R. Civ. P. 15(a).

This Court will not comment at this time on whether leave to amend is futile until such motion is filed. Defendant's motion (Docket No. 8) to dismiss with prejudice should be **denied**. As this Report recommends and defendant's motion to dismiss is granted, plaintiff should be given an opportunity to seek leave to amend.

**CONCLUSION**

Plaintiff's motion (Docket No. 16) for this Court to take judicial notice of certain identified items (the Senate Report for the Equal Credit Opportunity Act and a portion of its regulations) is **granted**.

Based upon the above, it is recommended that defendants' motion to dismiss (Docket No. 8) be **granted, but without prejudice to plaintiff having leave to brief whether an Amended Complaint should be allowed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.</u>**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
          December 11, 2019

13